NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

24-45

THEOPHILUS ROLAND, JR.

VERSUS

LOUISIANA DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 270,415
HONORABLE LOWELL C. HAZEL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

CANDYCE G. PERRET
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Van H. Kyzar, Candyce G. Perret, and Wilbur L. Stiles, Judges.

REVERSED.

Harrietta J. Bridges
Jennifer Del Murray
7979 Independence Blvd, #307
Baton Rouge, LA 70896
(225) 922-2311
COUNSEL FOR DEFENDANT/APPELLANT:
    Louisiana Department of Public Safety and Corrections

Jermaine L. Harris
Attorney At Law
618A Murray St.
Alexandria, LA 71301
(318) 290-3345
COUNSEL FOR PLAINTIFF/APPELLEE:
    Theophilus Roland, Jr.

**PERRET, Judge.**

Defendant, the State of Louisiana, through the Department of Public Safety and Corrections, Office of Motor Vehicles ("OMV"), appeals a judgment by the trial court that ordered it to reinstate Theophilus Roland, Jr.'s commercial driving license. For the following reasons, we reverse the judgment of the trial court.

**BACKGROUND FACTS AND PROCEDURAL HISTORY:**

On November 8, 2020, at 12:46 a.m., Theophilus Roland Jr. ("Plaintiff") was driving his Polaris Slingshot (a three-wheel autocycle) when he was stopped by Louisiana State Police Trooper Trevor Blanchard for the intensity of the vehicle's white lights all around the autocycle. Thereafter, Trooper Blanchard arrested Plaintiff for violating La.R.S. 32:327, which pertains to "Special restrictions on lamps." Trooper Blanchard testified that upon stopping Plaintiff because of the intensity of the lights around the autocycle, he noticed the odor of alcohol on Plaintiff's breath. When asked if he had been drinking, Plaintiff admitted to consuming a long island tea approximately one hour before driving and consented to a standard field sobriety test ("SFST"). Trooper Blanchard testified that because of Plaintiff's poor performance on the SFST, he also arrested Plaintiff on suspicion of operating a vehicle while intoxicated, first offense, in violation of La.R.S. 14:98. In accordance with the requirements of La.R.S. 32:661(C),[1] titled

---

[1] Louisiana Revised Statutes 32:661(C) provides, in pertinent part:

> C. (1) When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:
>
> (a) His constitutional rights under Miranda v. Arizona.
>
> (b) That his driving privileges can be suspended for refusing to submit to the chemical test.

"Operating a vehicle under the influence of alcoholic beverages or illegal substance or controlled dangerous substances; implied consent to chemical tests; administering of test and presumptions[,]" Plaintiff was given the opportunity to submit to a chemical test for intoxication, but he refused to submit a breath sample.

As a result of Plaintiff's refusal to submit to the alcohol concentration test, the OMV seized Plaintiff's personal driver's license pursuant to La.R.S. 32:667(A)(1). [2]  Additionally, in accordance with La.R.S. 32:414.2, titled "Commercial motor vehicle drivers and drivers with a commercial learner's permit; disqualification; issuance of Class "D" or "E" license; alcohol content in breath and blood; implied consent[,]" [3] and 49 C.F.R. § 383.51, titled "Disqualification of drivers[,]"[4] Plaintiff was statutorily disqualified and ineligible for his commercial driving privileges for one year.

On January 29, 2021, the assistant district attorney for the Ninth Judicial District Court, Parish of Rapides, filed a motion to *nolle prosequi* the charges of operating a vehicle while intoxicated and the flashing lights against Plaintiff for insufficient evidence, which was granted on February 1, 2021.

---

(c) That his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of 0.08 percent or above or, if he is under the age of twenty-one years, a blood alcohol level of 0.02 percent or above.

(d) That his driving privileges can be suspended if he submits to the chemical test and the test results show a positive reading indicating the presence of any controlled dangerous[.]

[2] Pursuant to La.R.S. 32:667(A), when a person is placed under arrest for a violation of La.R.S. 14:98, and that person "either refuses to submit to an approved chemical test for intoxication, or submits to such test and such test results show a blood alcohol level of 0.08 percent or above by weight," the arresting officer is required to seize the person's driver's license and issue a temporary license which notifies the person that he or she may request an administrative hearing in accordance with La.R.S. 32:668 within thirty days from the date of arrest.

[3] Louisiana Revised Statutes 32:414.2 contains provisions relating to the suspension and restriction of commercial driving privileges.

[4] 49 C.F.R. § 383.51 contains provisions relating to the United States Department of Transportation's authority to suspend and restrict commercial driving privileges.

Plaintiff requested an administrative hearing in accordance with La.R.S. 32:668(A), titled "Procedure following revocation or denial of license; hearing; court review; review of final order; restricted licenses[,]"[5] to contest the suspension of his driving license. Following the administrative hearing, the suspension of Plaintiff's driving privileges was affirmed on February 4, 2021. A Motion for Rehearing, Motion for Reopening, and Motion for Reconsideration was subsequently filed on February 24, 2021, which was denied on March 4, 2021.

On April 1, 2021, Plaintiff filed a Petition for Judicial Review and Temporary Restraining Order. Thereafter, on May 17, 2021, the trial court issued an order prohibiting OMV from "suspending or otherwise enforcing the challenged suspension of the driving privileges and/or driver's license, DL# 5635571-CV-26 of Petitioner Theophilus Roland Jr., pending further orders of this Court."

After a hearing on May 15, 2023, the trial court rendered a judgment "reinstat[ing] Plaintiff's driving privileges, with immediate effect." The trial court provided the following pertinent written reasons:

> Plaintiff alleges that the traffic stop was initiated based on the perceived violation of La. R.S. 32:327, "Special Restriction on

_____

[5] According to La.R.S. 32:668(A), the scope of the hearing is limited to:

(1) Whether a law enforcement officer had reasonable grounds to believe the person, regardless of age, had been driving or was in actual physical control of a motor vehicle upon the public highways of this state ... while under the influence of either alcoholic beverages or any abused substance or controlled dangerous substance[.]

(2) Whether the person was placed under arrest.

(3) Whether he was advised by the officer as provided in R.S. 32:661.

(4) Whether he voluntarily submitted to an approved chemical test and whether the test resulted in a blood alcohol reading of 0.08 percent or above by weight[.]

(5) Whether he refused to submit to the test upon the request of the officer.

(6) Such additional matters as may relate to the legal rights of the person, including compliance with regulations promulgated by the Department of Public Safety and Correction and rights afforded to the person by law or jurisprudence.

3

Lamps," and therefore, any subsequent events resulting from the stop constituted a violation of the Plaintiff's Fourth Amendment rights and fell under the doctrine of "Fruit of the Poisonous Tree." This Court agrees. Louisiana Code of Criminal Procedure Article 215[] [s]tates in pertinent part that: "a law enforcement officer may stop an individual in a public place if there is reasonable suspicion that the person is committing, has committed, or is about to commit an offense." La. Code Crim. Proc. art. 215.1(A).

At the time of the stop, State Police Trooper Blanchard indicated to Plaintiff that the stop was made due to the aftermarket lights installed on Plaintiff's "slingshot" motor vehicle, which allegedly violated La. R.S. 32:327. It was only after the stop, based on the alleged lights violation, that Trooper Blanchard initiated an investigation into Plaintiff's possible intoxication.

During the Judicial Review, this Court heard testimony from Trooper Blanchard, who stated that Plaintiff's vehicle did not violate the statute used as the basis for the traffic stop. Furthermore, Plaintiff's counsel submitted photographs as evidence supporting their claim that the "slingshot" motor vehicle was not in violation of La. R.S. 32:327. According to the "Fruit of the Poisonous Tree Doctrine," evidence derived from illegally obtained evidence is deemed inadmissible in court. While this Court acknowledges that Trooper Blanchard conducted a valid and legal investigation into possible intoxication after Plaintiff was stopped, the evidence must be excluded. Neither Trooper Blanchard's testimony nor the evidence presented by the State sufficiently demonstrated that Trooper Blanchard reasonably suspected Plaintiff of committing, having committed, or about to commit an offense at the time of the stop, as required by the Louisiana Code of Criminal Procedure. La. Code Crim. Proc. art. 215.1(A).

OMV now appeals this June 14, 2023 judgment, alleging the following two assignments of error:

1. The State of Louisiana, Department of Public Safety and Corrections, Office of Motor Vehicles alleges as error the trial court's finding that the dismissal of criminal charges for violation of La. R.S. 14:98 negates the mandatory disqualification of commercial driving privileges under the provisions of La.R.S. 32:414.2 and 49 C.F.R. §383.51.

2. The State of Louisiana, Department of Public Safety and Corrections, Office of Motor Vehicles alleges as error the trial court's entry of an order to reinstate the commercial driving privileges of Mr. Theophilus Roland, in violation of Louisiana state law and federal regulations.

On appeal, OMV argues that "under the Implied Consent Law, La.R.S. 32:661 *et seq.*, and La.R.S. 32:667(H), there is early reinstatement of driving privileges if the criminal charge of DWI is dismissed or reduced" but that "there is no parallel provision in La.R.S. 32:414.2 for commercial driving eligibility." OMV thus argues that "[t]here is no authorization for an early reinstatement of commercial driving privileges disqualified under La.R.S. 32:414.2[,]" and that "the trial court erroneously omitted all references to La.R.S. 32:414.2, La.R.S. 32:414(K)(3)[,] [6] and further ignored the mandatory provisions of 49 C.F.R. §383.51[,]" when it ordered the reinstatement of Plaintiff's commercial driving privileges.

In response, Plaintiff argues that OMV "has not challenged the trial court's finding that the traffic stop violated [his] Fourth Amendment rights or the trial court's application of the 'fruit of the poisonous tree' doctrine" and that "[t]he trial court's ultimate conclusion to reinstate [Plaintiff's] commercial driving privileges based on the Fourth Amendment violation were separate and valid grounds from the dismissal of criminal charges."

---

[6] Louisiana Revised Statutes 32:414(K) provides, in pertinent part:

> (1) When any person's driver's license has been seized, suspended, or revoked, and the seizure, suspension, or revocation is connected to a charge or charges of violation of a criminal law, and the charge or charges do not result in a conviction, plea of guilty, or bond forfeiture, the person charged shall not be required to pay any reinstatement fee if at the time for reinstatement of driver's license, it can be shown that the criminal charges have been dismissed or that there has been a permanent refusal to charge a crime by the appropriate prosecutor or there has been an acquittal.
>
> . . . .
>
> (3) Reinstatement under this provision does not apply to the commercial driver's license (CDL) disqualification of the license.

**STANDARD OF REVIEW:**

"When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings." *State v. Wells*, 08-2262, p. 4 (La. 7/6/10), 45 So.3d 577, 580. However, this case also involves the interpretation of La.R.S. 32:414.2, a statute addressing commercial driving privileges. "The interpretation and application of the statutes are matters of law subject to a de novo standard of review." *State v. Lexington Nat. Ins. Corp.*, 13-1134, p. 2 (La.App. 3 Cir. 3/5/14), 134 So.3d 230, 232. "A *de novo* review means the court will decide the matter after considering the statute at issue, the relevant law, and the record without deference to the legal conclusions of the courts below." *State v. Lee*, 22-1827, p. 4 (La. 9/1/23), 370 So.3d 408, 412.

**DISCUSSION:**

In this case, the trial judge reinstated Plaintiff's commercial driving privileges with immediate effect upon finding that "evidence derived from illegally obtained evidence is deemed inadmissible in court." Specifically, the trial judge acknowledged that "Trooper Blanchard conducted a valid and legal investigation into possible intoxication *after* Plaintiff was stopped" but excluded the evidence under La.Code Crim.P. art. 215.1(A) upon finding that "[n]either Trooper Blanchard's testimony nor the evidence presented by the State demonstrated that Trooper Blanchard reasonably suspected Plaintiff of committing, having committed, or about to commit an offense at the time of the stop, as required by . . . La. Code Crim. Proc. art. 215.1(A)." Thus, before we address Plaintiff's commercial driving privileges under the provisions of La.R.S. 32:414.2, we will

address whether Trooper Blanchard had reasonable cause to stop the Plaintiff's vehicle.

According to La.Code Crim.P. art. 215.1(A), "[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." Moreover, "[a]n individual cannot be stopped in his automobile by a police officer, without a warrant, unless the officer had a reasonable suspicion that the individual has committed, or is about to commit, a criminal offense, including the violation of a traffic regulation." *State v. Fisher*, 94-603, p. 5 (La.App. 3 Cir. 11/2/94), 649 So.2d 604, 607, *writ denied*, 94-2930 (La. 4/7/95), 652 So.2d 1344. "When an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable, regardless of the officer's subjective motivation." *State v. Hunt*, 09-1589, p. 9 (La. 12/1/09), 25 So.3d 746, 753.

At the May 15, 2023 hearing, Trooper Blanchard testified regarding the traffic stop as follows, in pertinent part:

> Q     Okay. Please tell the Court the circumstances surrounding your contact with Mr. Roland on November 8th of 2020.
>
> A     I initiated a traffic stop on the vehicle that he was operating. It was a three-wheel vehicle and it had lights emitting from all sides of it and in the wheels and rims.
>
> Q     And what was the reason for the stop?
>
> A     It was due to -- due to the lights on the vehicle.
>
> Q     Were they in violation of a law?
>
> A     32 -- 32 statute, yes, ma'am, 32:327.
>
> Q     And that statute is what?

A     It's special restrictions on lamps.

. . . .

Q     And you indicated that the vehicle was emitting white lights all around the vehicle?

A     That is correct.

Q     And those lights were in violation of a specific statute that you have already testified to, is that correct?

A     That's correct.

On cross-examination, Trooper Blanchard further testified regarding the

initial stop of Plaintiff's vehicle because of the lights on the vehicle, as follows:

Q     Okay. . . . You stated the reason that you stopped Mr. Roland on that night was because of the lights on his vehicle, is that correct?

A     That is correct.

Q     Okay. What was the problem with the vehicle, why was the vehicle not in compliance with that statute?

A     With that statute specifically, the lights appeared to be LED lights. They were illuminating all around the vehicle[.]

Q     Uh-huh.

A     . . on the wheels . .

Q     Uh-huh.

A     . . and on the front of the vehicle. Lights on all around the vehicle shouldn't be able to be seen for more than 300 feet and also strike the level surface. So, that was a portion of that statute. There's several other statutes that also fit with that but that's the statute that I went with.

Q     Okay. So, was the - - was the issue with the lights the fact that it was on the side of the vehicle or was it -- what was the issue with the lights?

A     So, again, there's other 32 statutes that match it. On the front of the vehicle he can't have more than four lights. He had strips of lights on the front of the vehicle but also from the side, you can not have lights that illuminate from the side such as LED lights. And with

8

another statute he can't -- he can have some for running boards but they can not -- they can not emit glare.

Q       I think the statute that you said he was in violation of was 32:327, is that correct?

A       That is correct, yes.

Q       Okay. So - - so, in regards to the particular statute, does it say that he can't have lights on side the vehicle, does that statute state that?

A       I would have to read the statute but for that one, yeah, it's restrictions on lamps.  So, he couldn't have anything on - - from what I recall, on the side of the vehicle that emitted for more than 300 feet candle watt power.

Q       Okay. I'm looking at Louisiana Revised Statute 32:327.  And it mentions subsection A about the beam of light being an intensity greater than 300 candle power, [were] the lights on his vehicle brighter than that?

A       I believed them to be.

Q       You believed them to be.  Is there a way you were able to check that or . .

A       I was . .

Q       . . confirm that?

A       . . not, no, sir . .

Q       Okay.

A       . . I was not able to measure them.

Q       So, was the issue that the lights were too bright or that they were . .

A       They were . .

Q       . . on the side of the vehicle?

A       . . - - they were very bright and on the side of the vehicle.

Louisiana Revised Statutes 32:327(A) provides, as follows:

A. Any lighted lamp or illuminating device upon a motor vehicle, other than head lamps, spotlamps, auxiliary lamps, flashing

9

turn signals, emergency vehicle warning lamps and school bus warning lamps, which project a beam of light of an intensity greater than 300 candlepower shall be so directed that no part of the high intensity portion of the beam will strike the level of the roadway on which the vehicle stands at a distance of seventy-five feet from the vehicle.

Based on Trooper Blanchard's testimony, and the fact that the traffic citation issued to Plaintiff was in regard to the lighting on his vehicle, we find Trooper Blanchard articulated specific facts supporting a reasonable suspicion that Plaintiff's vehicle was in violation of a state statute which prohibits "[a]ny lighted lamp or illuminating device upon a motor vehicle, other than head lamps, spotlamps, auxiliary lamps, flashing turn signals, emergency vehicle warning lamps and school bus warning lamps, which project a beam of light of an intensity greater than 300 candlepower[.]" Accordingly, we find Trooper Blanchard's initial stop was supported by reasonable suspicion and did not violate Plaintiff's constitutional rights. As such, we find the trial court erred in ruling that "any subsequent events resulting from the stop constituted a violation of the Plaintiff's Fourth Amendment rights and fell under the doctrine of 'Fruit of the Poisonous Tree.'"

We next consider whether the OMV properly suspended Plaintiff's commercial driver's license for a year when he refused to submit to a chemical test for intoxication pursuant to La.R.S. 32:414.2. In *Austin v. Dep't of Pub. Safety, Off. of Motor Vehicles,* 46,654, p. 3 (La.App. 2 Cir. 11/2/11), 77 So.3d 474, 475, the court stated that "[i]n 1989, the legislature created a series of provisions relating to the suspension and restriction of commercial driving privileges. La.R.S. 32:414.2 *et seq.* The thrust of these statutes is to provide stronger penalties for commercial drivers who commit certain enumerated offenses while operating a

10

commercial motor vehicle." Louisiana Revised Statutes 32:414.2 specifically addresses commercial motor vehicle drivers and grounds for disqualification of a commercial driver's license ("CDL"), and the applicable subsection is (A)(4), which states in pertinent part:

> Except as provided in Subparagraph (2)(a) of this Subsection for lifetime disqualification, and in Paragraph (3) of this Subsection for three years disqualification for offenses committed while transporting hazardous materials, any person shall be disqualified from operating a commercial motor vehicle for a minimum period of one year for:
>
> . . . .
>
> (d) A first offense of refusal to submit to an alcohol concentration or drug test, while operating a commercial motor vehicle or noncommercial motor vehicle by a commercial driver's license holder.

In *Navarre v. Louisiana Department of Public Safety and Corrections, Office of Motor Vehicles*, 13-949 (La.App. 3 Cir. 2/12/14), 153 So.3d 1096, *writ denied*, 14-0512 (La. 4/25/14), 138 So.3d 645, this court addressed the issue of whether the act of refusing to submit to an alcohol concentration test mandates a driver be disqualified from operating a commercial motor vehicle for a minimum period of one year. In ruling that La.R.S. 32:414.2 mandates a one-year disqualification of a CDL because of a person's mere refusal to submit to an alcohol concentration test, this court cited to *Austin*, 77 So.3d 474, and stated as follows, in pertinent part:

> [In *Austin*,] the second circuit ruled that the legislature intended "to hold individuals with a CDL to a zero tolerance standard as far as alcohol/drug use and driving[.]" [*Austin*, 77 So.3d at 476]. The second circuit noted that La.R.S. 32:414.2(A)(4)(d) penalized the refusal to submit to an alcohol concentration or drug test for CDL holders, whether they were driving a commercial motor vehicle or a noncommercial vehicle. Thus, even though "[i]t seem[ed] harsh to penalize [Mr.] Austin for refusal to submit to the blood test when he was ultimately acquitted of the crime of DWI[,]" because Mr. Austin

11

had refused to submit to the alcohol concentration test, the second circuit reinstated the disqualification of his commercial driving privileges. *Id.*

*Navarre*, 153 So.3d at 1100 (first and third alteration added).

In *Austin*, Mr. Austin was arrested for operating a vehicle while intoxicated after he refused to submit to an alcohol concentration test. OMV suspended Mr. Austin's driving privileges and further declared that Mr. Austin was ineligible for commercial driving privileges for one year. Mr. Austin sought an administrative hearing, and the suspension was affirmed. Mr. Austin was ultimately acquitted of the driving while intoxicated charge, and OMV reinstated his Class E personal driver's license, but refused to return his CDL. Mr. Austin filed suit, and the trial court ordered OMV to reinstate his CDL. The second circuit reversed the trial court and reinstated the disqualification, stating as follows:

> There is no ambiguity that the obvious legislative intent embodied in La. R.S. 32:414.2 was to hold commercial license vehicle operators to a higher standard. This intent can be seen, for example, under La.R.S. 32:414.2(A)(1)(b)(i), which mandates that once disqualified, there is no economic hardship license to operate a commercial motor vehicle as there is for noncommercial vehicles. Additionally, an individual with a CDL will not be convicted for DWI under La.14:98 if the alcohol concentration test shows a blood alcohol level less than .08%; however, that individual will be subject to having his CDL disqualified if his blood alcohol level is under .08% but at least .04% while driving a commercial vehicle. *See* La.R.S. 32:414.2(A)(4)(a)(ii). We note that the chapter on driver license law contains stricter requirements for obtaining a CDL than for a noncommercial license. Finally, this section in question was amended by the Legislature in 2007, adding that a CDL holder will also be disqualified if he refuses to submit to the test even while operating a **noncommercial vehicle**—again showing the legislative intent to hold CDL operators to a higher standard of accountability.
>
> Obviously, the intent of the Legislature was to hold individuals with a CDL to a zero tolerance standard as far as alcohol/drug use and driving, even applying that standard to a noncommercial vehicle driven by the CDL operator. The reasoning is that an individual with the privilege of having a CDL should **never** imbibe alcohol when behind the wheel of any vehicle, and, that being the case, should never

12

have cause to refuse a request for an alcohol concentration test. Because an individual with a CDL has a heightened duty to the public considering the public safety ramifications, the Legislature's harsh standard serves to protect the public and is reasonable. Thus, considering the clear and unambiguous wording of the applicable statute, as well as the spirit of the law contained in that chapter of Title 32, the trial court erred in its finding against the OMV on its refusal to reinstate Austin's CDL.

*Id.* at 476-77 (emphasis in original).

After reviewing the jurisprudence on this issue, we also find that "[t]he language of the statute is clear that a refusal alone results in the disqualification of commercial driving privileges, regardless of any subsequent criminal filings or proceedings." *Gray v. Louisiana Dep't of Pub. Safety & Corr. Through Off. of Legal Affs.*, 16-612, p. 10 (La.App. 1 Cir. 2/17/17), 217 So.3d 412, 419, *writ denied sub nom. Gray v. Louisiana Dep't of Pub. Safety & Corr. through Off. of Legal Affs. (License Control & Driver Improvement Div.)*, 17-1013 (La. 10/9/17), 227 So.3d 831. *See also Dore v. State, Dep't of Pub. Safety, Off. of Motor Vehicles*, 13-892, p. 3 (La.App. 3 Cir. 2/12/14), 153 So.3d 1089, 1092 (wherein this court held that La.R.S. 32:414.2(A)(4)(d) is an administrative regulatory action that suspends a person's CDL for one year for the mere refusal to submit to an alcohol concentration test, "regardless of any subsequent criminal filings or proceedings."). Moreover, the reinstatement provision of La.R.S. 32:414 does not apply to the disqualification of the CDL. *See* La.R.S. 32:414(K)(3).

Similarly, because Plaintiff is the holder of a CDL, and refused to submit to an alcohol concentration test while operating a noncommercial motor vehicle, he was subject to an automatic disqualification of his commercial driving privileges for one year under La.R.S. 32:414.2(A)(4)(d). Thus, although Plaintiff was entitled to the early reinstatement on the suspension of his non-commercial driving

13

privileges under La.R.S. 32:667(H), it was legal error for the trial court to reinstate his commercial driving privileges under La.R.S. 32:414.2.

For these reasons, we hereby reverse the decision of the trial court that reinstated Plaintiff's commercial driving privileges. All costs of these proceedings are assessed to Appellee, Theophilus Roland.

**REVERSED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.